IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CARLOS V. GONZALES,**

      **Plaintiff,**

      **vs.**                                                                          **Civ. No. 14-484  WJ/KK**

**NURSE DAISY LNU of the Valencia
County Detention Center Medical Staff,**

      **Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendant Nurse Daisy LNU's ("Defendant Daisy")[1] Motion for Summary Judgment (Doc. 11), filed February 3, 2015, and Defendant's *Martinez* Report (Doc. 18), filed April 13, 2015.  Plaintiff filed his Response to Defendant's Motion for Summary Judgment on March 11, 2015, and therein asked the Court to remand this case to state court for resolution. (Doc. 16 at 5.)[2]  By an Order of Reference (Doc. 23), filed August 11, 2015, these matters were referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of

---

[1] Valencia County Detention Center ("VCDC") filed the Motion for Summary on behalf of Defendant Nurse Daisy LNU.  VCDC explained therein, and in "Nurse Daisy's Answer," filed October 14, 2014, that it had been unable to identify any "Nurse Daisy."  (Doc. 7 at n.1.)  VCDC also filed Defendant's *Martinez* Report, but not as a named defendant. (Doc. 18 at n.1.)  In the *Martinez* Report, VCDC informed the Court that it had identified a former medical assistant named Daisy Torres. (*Id.*)  "However, Daisy Torres was not a nurse and not an employee of the detention center.  She was a medical assistant employed by an independent contractor, who has not been named." (*Id.*) VCDC asserts that if this matter were to proceed, Plaintiff should be required to amend his complaint and name the independent contractor that employed Daisy Torres. (*Id.*)

[2] Plaintiff's Response to Defendant's Motion for Summary Judgment is unsworn.  While the Court must construe a *pro se* litigant's pleadings liberally, "they must still comply with the minimum requirements of the [summary judgment] rules.  In the absence of other evidence, an unsworn allegation does not meet the evidentiary requirements of Rule 56 of the Federal Rules of Civil Procedure." *Gorton v. Williams*, 309 F. App'x 274, 275 (10th Cir. 2009) (internal citation omitted).  As such, Plaintiff's Response does not set out admissible evidence for purposes of determining whether there is a genuine issue of fact for trial. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted).

1

the case. Having reviewed the submissions of the parties and the relevant law, and being otherwise fully advised, I recommend that Defendant Daisy's Motion for Summary Judgment (Doc. 11) be **DENIED**. I further recommend that Defendant Daisy's Motion for Summary Judgment raised in the *Martinez* Report (Doc. 18) as to Plaintiff's federal claims be **GRANTED** and that Plaintiff's section 1983 civil rights claim against Defendant Daisy be **DISMISSED WITH PREJUDICE**. Finally, I recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state tort claim, and that such claim be **REMANDED** to the Thirteenth Judicial District Court, County of Valencia, State of New Mexico.

## I. Introduction

This case arises out of Plaintiff's allegations that he was denied medical care during his temporary confinement at the Valencia County Detention Center ("VCDC") from July 9, 2012 to July 20, 2012. Plaintiff was transferred on July 9, 2012, from Southern New Mexico Correctional Facility ("SNMCF"), where he was serving time on a prison sentence, to VCDC for the purpose of appearing in that district pursuant to a felony summons. (Doc. 6 at 11; Doc. 18-1 at 4, 8-10.) Plaintiff was screened upon intake into the facility on July 9, 2012 and denied having depression or suicide-related issues, denied being injured, denied being under a doctor's care, and denied taking any medication of any kind. (Doc. 18-1 at 13.) Later that same day, however, Plaintiff had a medical intake screening wherein he disclosed that he had hypoclycemia and diabetes and had been receiving glucose pills while in the custody of the New Mexico Department of Corrections ("NMDOC"). (Doc. 18-1 at 19-20.) Plaintiff denied having any sexually transmitted diseases ("STD")[3] and reported that he was taking the antidepressant medications Effexor and Remeron. (Doc. 18-1 at 20.) This report prompted a medical provider

---

[3] Although he did not disclose this on intake, Plaintiff now asserts that prior to his transfer to VCDC healthcare providers at the NMDOC had diagnosed him with genital herpes. (Doc. 6 at 2.)

within VCDC to call and leave a message with SNMCF to verify Plaintiff's medication report. (Doc. 18-1 at 19.) The record does not reflect whether the medical providers at SNMCF ever called back and verified Plaintiff's medications.

On July 10, 2012, the day after his arrival at VCDC, Plaintiff submitted a written medical request claiming that he had been cutting weeds at SNMCF and had developed a rash on his legs. (Doc. 18-1 at 27.) Four days later Plaintiff was seen in medical and provided with pain medication and "hydro" cream. (*Id.*) The medical provider also noted on this date that Plaintiff was "kicking psy(ch) med(ication)." (*Id.*) The following day, on July 15, 2012, Plaintiff submitted another medical request form seeking anti-fungal cream for jock itch. (*Id.* at 23.) The record reflects that a medical provider reviewed this request on July 16, 2012 and noted that Plaintiff had already been provided with "hydro" cream for his legs. (*Id.*) On the same date, Plaintiff submitted another written medical request reporting that he was not actually having jock itch but rather was having an "STD flare-up." (*Id.* at 25.) Plaintiff apologized for his mistake and requested "acyclouieza [sic]". (*Id.*)

On July 19, 2012 Plaintiff wrote a complaint directed to the Warden/Deputy Warden stating that he was on day five of an STD flare-up, had put in requests for medical care and "even explained this to nurse Daisy about my STD," and that "Daisy nurse says she is waiting on information that I have had medication for my STD." (*Id.* at 26.) Plaintiff also wrote an "informal complaint" to his case manager "for medical denying me medical help." (*Id.* at 28.) In this complaint Plaintiff states that he told an unnamed female in medical "4 times I need help!!!" and medical also refused to give him his mental health medication. (*Id.* (emphasis in original).) On July 20, 2012, Plaintiff was transferred from VCDC back to SNMCF. (Doc. 6. at 1-2.)

3

The July 16, 2012 medical request form wherein Plaintiff mentioned an STD flare-up for the first time in writing was not received by the medical unit until July 21, 2012, a day after Plaintiff was transferred out of VCDC and back into NMDOC custody. (*Id.* at 25.) Plaintiff's July 19, 2012 complaints to the Warden and the case manager were not received until July 24, 2012, four days after he had been transferred out of the facility. (Doc. 18-1 at 26, 28.) Plaintiff alleges that he went five days without medical treatment and that, as a result, he now has permanent discoloration on the tip of his penis. (Doc. 6 at 3, 8, 11.)

## II. Procedural History

Plaintiff initially filed his Tort Complaint against "Valencia County Detention Center Medical Staff" in the Thirteenth Judicial District Court, State of New Mexico, County of Valencia, Civ. No. D-1314-CV-2014-00448, on April 18, 2014. (Doc. 1-2 at 1-3; Doc. 6 at 7-9.) In his complaint, Plaintiff alleged he did not receive medical treatment for his STD, and sought a judgment for cruel and unusual punishment and mental anguish. (*Id.*) On May 22, 2014, Defendant removed the action from state district court to this Court on the basis of federal question jurisdiction, because it appeared that in addition to a tort claim, Plaintiff's action alleged a federal constitutional violation. (Doc. 1.) The Court then reviewed Plaintiff's Complaint *sua sponte* and determined that his allegations failed to state a claim for relief against an identifiable defendant. (Doc. 5.) The Court dismissed "Valencia County Detention Center Medical Staff" but granted Plaintiff leave to file an amended complaint identifying the individuals who allegedly denied him medical treatment. (*Id.*) The Court also directed the Clerk of the Court to send Plaintiff a "§ 1983 complaint [form]." (*Id.*)

On September 30, 2014, Plaintiff filed an "Amended Per Court Order Prisoner's Civil Rights Complaint" against "Nurse Daisy (LNU) of the Valencia County Detention Center

Medical Staff, and NMCD at SNMCF Medical Responsible for Making Sure Medications followed me from SNMCF – Name Unknown." (Doc. 6.) In his Amended Complaint, Plaintiff again alleged improper medical care related to not receiving his mental health medications and not being treated for his STD flare-up, and asserted federal constitutional and tort claims. (*Id.* at 1-12.) Plaintiff attached a copy of his original Tort Complaint to his Amended Complaint. (*Id.*) On October 14, 2014, VCDC filed "Defendant Nurse Daisy's Answer" to Plaintiff's Amended Complaint.[4] (Doc. 7.) The Court reviewed Plaintiff's Amended Complaint *sua sponte* and dismissed his claims against "SNMCF Medical Staff," with leave to file claims against individually named defendants at SNMCF.[5] (Doc. 8.) Following the Court's second *sua sponte* review, only Plaintiff's claims against Defendant Daisy remained viable.

On January 14, 2015, the Court entered an Order for *Martinez* Report (Doc. 9), directing Defendant Daisy "to investigate the incident or incidents underlying Plaintiff's lawsuit and submit a report of [her] investigation in order to develop a factual or legal basis for determining whether Plaintiff has a meritorious claim." (*Id.* at 3.) VCDC filed a Motion for Summary Judgment on Defendant Daisy's behalf on February 3, 2015, arguing that Plaintiff failed to exhaust his administrative remedies under both the Prison Litigation Reform Act ("PLRA") and the New Mexico Statutes Annotated, and this motion is fully briefed. (Docs. 11, 14, 15, 16.) VCDC timely filed a *Martinez* Report on April 13, 2015, and therein requested summary judgment on the additional ground that Plaintiff cannot establish a violation of his constitutional

---

[4] *See* Fn.1, *supra*.

[5] On January 28, 2015, Plaintiff filed a Motion for Extension of Time, requesting a "ninety-day extension to respond to the Memorandum Opinion and Order." (Doc. 10.) To the extent Plaintiff was seeking relief from the Memorandum Opinion and Order, the Court allowed him until March 2, 2015, to file a motion to reconsider. (*Id.*) To the extent Plaintiff was seeking an extension of time to file a second amended complaint, the Court explained that no time limit had been imposed. (*Id.*) However, the Court reminded Plaintiff that "filing an Amended Complaint adding factual allegations against individually named defendants at SNMCF must be filed within any relevant statute of limitations governing his claims." (*Id.*) Plaintiff did not file a motion to reconsider and, to date, he has not filed a second amended complaint.

rights.  (Doc. 18 at 6-9.)  Plaintiff did not file a response to the *Martinez* Report and his time for doing so has passed.  (Doc. 9 at 4 (granting Plaintiff forty-five (45) days from the date of service of Defendant's *Martinez* Report to file his response thereto).)

### III.  Standard of Review

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  A "genuine" dispute exists where the evidence is such that a reasonable fact-finder could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record," and such materials must be in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(1)(A) and (2).  Parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  The moving party need not negate the nonmovant's claim, but rather may show that "there is an

absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

The nonmoving party cannot rely upon conclusory statements to defeat summary judgment.  *See Fitzgerald v. Corr. Corp. of Am*., 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan*., 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the nonmoving party must go beyond the allegations and denials of his pleadings and "designate 'specific facts'" showing that there is a genuine issue for trial.  *Celotex Corp*., 477 U.S. at 324; *Anderson,* 477 U.S. at 256; *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993).  If the nonmoving party fails to properly address the movant's properly supported assertions of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998); *see also Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).  The Court's role is not to weigh the evidence, but to assess the threshold issue of

whether a genuine issue of material fact exists, requiring a trial. *Anderson*, 477 U.S. at 249. Finally, the Court cannot decide issues of credibility. *Id.* at 255.

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citation omitted). A *Martinez* report is also treated as an affidavit, and this report and the supporting documents can be used in determining whether to grant summary judgment if the report's statements are based on personal knowledge and sworn under penalty of perjury. *Id.; see also* Order to File a *Martinez* Report, (Doc. 9 at 4) (putting parties on notice that the report may be used in deciding whether to grant summary judgment on Plaintiff's claims, whether by motion or *sua sponte* and directing the parties to submit whatever materials they consider relevant to Plaintiff's claims).) A court cannot resolve material disputed factual issues by accepting a *Martinez* report's findings when they are in conflict with sworn pleadings or affidavits. *Hall*, 935 F.2d at 1109. As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1200 (10th Cir. 2006). "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. However, "it is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

### IV.   Analysis

A. Exhaustion of Administrative Remedies

Defendant asserts that Plaintiff has failed to exhaust administrative remedies, as required by the PLRA and section 33-2-11(B) of the New Mexico Statutes Annotated and seeks dismissal of Plaintiff's federal and state law claims on that basis. (Doc. 7 at 1; Doc. 11 at 2, 5; Doc. 18 at 7.) The Court disagrees that Defendant is entitled to summary judgment on Plaintiff's claims

against her on the grounds of failure to exhaust administrative remedies, and therefore recommends denial of Defendant Daisy's Motion for Summary Judgment.

### 1. Prison Litigation Reform Act

The PLRA, 42 U.S.C. § 1997e(a), requires that a prisoner exhaust administrative remedies before filing a federal-law action with respect to prison conditions. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); *see Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust administrative remedies is an affirmative defense under the PLRA). The exhaustion requirement is mandatory and "unexhausted claims cannot be brought in court." *Id.* at 211. "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Pen.*, 511 F.3d 1109, 1112 (10th Cir. 2007). The Supreme Court has held that this provision requires "proper exhaustion" – that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Prisoners must exhaust all *available* remedies even if those remedies "appear to be futile at providing the kind of remedy sought[.]" *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). However, if an "administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). "To be 'available,' a remedy must be 'capable of use for the accomplishment of a purpose.'" *Id.*

In the present matter, although the evidence clearly establishes that Plaintiff did not exhaust the grievance procedure in place at VCDC, as discussed below, the timing of Plaintiff's transfer out of the facility made the grievance procedure unavailable to him. Plaintiff should be excused from the requirement of PLRA exhaustion. *See Rodriguez v. Westchester Cnty. Jail Corr. Dep't.*, 372 F.3d 485, 488 (2d Cir. 2004). At the time of the alleged occurrence, VCDC had in place an Inmate Grievances Policy[6] that outlined the procedural rules and deadlines governing the grievance procedures for inmates *within the facility*. (Doc 11-1, at 4 ¶ A (listing matters "grievable by *inmates in this facility*" (emphasis added)); *see also id.* at 3 (defining "inmate" for purposes of Inmate Grievance policy as a "person . . . in the custody of the Valencia County Detention Center.")) The grievance process included, *inter alia*, three primary phases: (1) an informal phase that requires an inmate to speak with the person responsible for the incident giving rise to the complaint within five (5) working days; (2) a formal stage that requires the inmate to file a written grievance, on a designated grievance form, with the facility grievance officer within ten (10) working days of the alleged incident and the grievance officer to conduct an investigation and complete a written report; and, (3) an appeal stage that requires the inmate to appeal the grievance officer's written decision to the Warden within five (5) working days of receipt of the decision. (*Id.* at 4-6.) The Warden is the final level of appeal for grievances. (*Id.* at 6.)

---

[6] VCDC attached to Defendant Daisy's Motion for Summary Judgment a copy of the Inmate Grievances Policy in effect at the time of the alleged occurrence, along with the Affidavit of Joe Chavez, Warden of VCDC, who authenticated the grievance policy and attested that it was in effect at the time of the alleged occurrence. (Doc. 11-1 at 2, ¶ 6.)

On July 19, 2012, Plaintiff submitted three inmate communication forms[7] directed to the medical department, the warden/deputy warden, and the case manager, respectively. (Doc. 18-1 at 24, 26, 28.) In these communications Plaintiff indicated that he had made at least two requests for STD medication, and that he explained to Defendant Daisy that he was in day five of an STD flare up and that she had communicated to him that she was waiting on information regarding prior treatment and medication for his STD. (*Id.*) At a minimum, it appears that Plaintiff complied with the informal phase of the grievance process by verbally communicating his grievance regarding alleged lack of medical treatment to Defendant Daisy. Moreover, Plaintiff indicated the additional communication forms should also be treated as informal complaints for not receiving medical care related to his STD flare-up. (*Id.*) Pursuant to the Inmate Grievances Policy, Plaintiff had ten days to file a formal grievance, or at a minimum until July 24, 2015. (Doc. 11-1 at 4.) In the meantime, however, on July 20, 2015, Plaintiff was transferred from VCDC back to SNMCF. (Doc. 18-1 at 1-2.)

To the extent Plaintiff contends in his unsworn Response to Defendant Daisy's Motion for Summary Judgment that he was not advised of the grievance policy, and even if the Court were to accept his contention as true, there is no authority under the PLRA for waiving or excusing compliance with exhaustion requirements based on a prisoner's asserted ignorance of the correctional facility's grievance policy. *See generally Simmons v. Stus*, 401 F. App'x 380, 381-82 (10th Cir. 2010) (unpublished) (citing *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003) (unpublished)); *see also Griffin v. Romero*, 399 F. App'x 349, 351 (10th Cir. 2010) (unpublished) (affirming dismissal for failure to exhaust administrative remedies

---

[7] VCDC attached to the *Martinez* Report, *inter alia*, its entire jail file for Plaintiff, including any and all medical information. (Doc. 18-1.) VCDC also attached the Affidavit of Joe Chavez, Warden of VCDC, who authenticated the attachments. (Doc. 18-6.)

despite prisoner's claim that jail officers did not make grievance process available to him).[8] However, under the plain language of the inmate grievance policy, Plaintiff's transfer before the grievance process was final made the grievance procedures unavailable to him.  (Doc. 11-1 at 4-6.)  To date, Defendant has presented no evidence demonstrating otherwise.

"[W]hen an inmate forgoes administrative remedies because prison officials have made it irrational for him to pursue them, the inmate loses a benefit that Congress intended to bestow on him."  *Tuckel*, 660 F.3d at 1253 (internal quotations omitted).  "Without venturing into the realm of guesswork, we are confident that Congress did not intend the exhaustion requirement to summarily prevent inmates from vindicating their constitutional rights."  *Id.*  Applying these principles, under the evidence presently before the Court, Plaintiff's failure to exhaust remedies should be excused and the PLRA exhaustion requirement should not bar his federal claims.

### 2. New Mexico Statutes Annotated § 33-2-11

Defendant also seeks summary judgment on Plaintiff's state tort claim on the grounds that Plaintiff failed to exhaust administrative remedies as required under New Mexico statutory law.  Section 33-2-11 of the New Mexico Statutes Annotated provides that state tort claims that are substantially related to the corrections department's incarceration of an inmate may not be brought "until the inmate exhausts the corrections department's internal grievance procedures."  N.M. Stat. Ann. § 33-2-11(B) (1978).   Defendant has offered no evidence supporting her argument that this provision bars Plaintiff's state tort claim.  Initially, because Plaintiff's claims arise from his incarceration at a county detention center and not from his incarceration by the corrections department, Section 33-2-11(B) does not appear to even apply in this case.  Further, Defendant has failed to identify, attach, or cite to the corrections department's internal grievance

---

[8] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

procedures that Plaintiff allegedly failed to exhaust.  Having utterly failed to meet her burden of proof, the Court must recommend denial of Defendant's motion for summary judgment on this ground.

### B. Plaintiff's Constitutional Claims

Plaintiff has brought a federal constitutional claim against Defendant Daisy under 42 U.S.C. § 1983, which provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law."  *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  Plaintiff did not specifically cite to any constitutional provision in his amended complaint, but does claim the alleged inadequate medical care Defendant provided amounted to cruel and unusual punishment – which punishment is of course explicitly prohibited by the Eighth Amendment.

Claims related to inadequate medical care fall within the Fourteenth Amendment's due process clause for pre-trial detainees, *Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994), and the Eighth Amendment's cruel and unusual punishment prohibition for sentenced prisoners, *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  Here, the record is unclear whether Plaintiff's was detained on a pre-trial matter during his eleven-day period of temporary confinement at VCDC. It is clear that directly before and after his transfer to VCDC, Plaintiff was a convicted prisoner serving a sentence within the NMDOC.  Nevertheless, although in many instances the Fourteenth Amendment provides greater protection to pre-trial detainees than does the Eighth Amendment to sentenced prisoners, in the context of medical care the analysis is the same; thus, the Court

need not determine whether Plaintiff's claims arise under the Fourteenth or Eighth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 762-64 (10th Cir. 1999); *Williams v. Rodriguez,* 509 F.3d 392, 401 (7th Cir. 2007); *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("the due process rights of a person . . . are at least as great as the 8th Amendment protections. . ."). Indeed, deliberate indifference to an inmate's serious medical needs violates both the Eighth Amendment's prohibition on cruel and unusual punishment, and the Fourteenth Amendment's due process protections. *See Howard,* 34 F.3d at 980; *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody.")

To prevail on a Fourteenth or Eighth Amendment medical indifference claim, a plaintiff must prove two elements: (1) objectively, that his medical needs were sufficiently serious; and (2) subjectively, the prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal citations omitted). A delay in medical treatment does not violate an inmate's constitutional rights unless he can show that the delay resulted in substantial harm. *Id.* at 1210 (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

In the present matter, while anxiety and depression are serious mental health conditions, Plaintiff has not presented any evidence of substantial harm that resulted from the eleven-day absence of medication for these conditions. Instead, Plaintiff relies solely upon his conclusory allegations that the eleven-day delay caused him "pain and anguish," and "everything else that comes with not receiving proper medical treatment." (Doc. 6 at 2.) Standing alone, this is simply insufficient to defeat summary judgment. Thus, the undersigned proposes to find that no genuine issues of material fact exist which would preclude summary judgment on Plaintiff's constitutional claims arising out of failure to medicate him for his prior mental health diagnosis, and these claims should be dismissed.

On the claim relating to failure to treat his STD, Defendant has failed to present credible evidence to overcome her burden of demonstrating an absence of genuine issues of material fact concerning the objective prong. Thus, only for purposes of the present summary judgment motions under consideration, the Court must assume the truth of Plaintiff's sworn allegations that he has permanent discoloration and disfigurement on the tip of his penis, and proposes to find that this medical need was sufficiently serious and the delay in care resulted in substantial harm.

However, Plaintiff cannot defeat summary judgment as to his constitutional claim related to his STD, because there is simply no evidence in the record, much less evidence which creates genuine issues of material fact for trial, to support the subjective prong of the deliberate indifference standard. The subjective prong requires evidence of a prison official's culpable state of mind. *Mata*, 427 F.3d at 751 (citing *Estelle*, 429 U.S. at 106). Deliberate indifference is analogous to criminal recklessness, "which makes a person liable when [he] consciously disregards a substantial risk of serious harm." *Id.* at 752; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). Thus,

> [t]he subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference.

*Mata*, 427 F.3d at 751; *Self*, 439 F.3d at 1231; *see Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) ("To prevail on the subjective component, the prisoner must show that the defendants 'knew he faced a substantial risk of harm and disregarded the risk, by failing to take reasonable measures to abate it.'"). A prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role." *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211); *see also Estelle*, 429 U.S. at 104-105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care"). "[W]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self,* 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 842).

In this case, to meet the subjective element of the deliberate indifference test, Plaintiff must cite to facts supporting an inference that Defendant Daisy knew about and disregarded a "substantial risk of harm" to his health or safety. *Id.* Although he claims to have told Defendant Daisy that he needed help for an STD, there is no evidence in the record that he told Defendant Daisy or that she otherwise knew, that he was claiming to have herpes. Nor is there evidence that she knowingly failed or refused to provide him with treatment for that condition, or intentionally denied or delayed his access to such treatment. Plaintiff states in a conclusory fashion that Defendant Daisy refused to call for any of his medications from the prison, but there is evidence in his medical records that an unidentified medical provider from VCDC called

16

SNMCF to confirm his medication with the prison provider.  In any event, there is no evidence that had Defendant Daisy placed such a call Plaintiff would have received treatment sooner.  The evidence demonstrates that Plaintiff himself did not believe he was suffering from an STD until July 16, 2012, and before that date believed he was suffering from and seeking treatment for a less serious condition of jock itch.  Thus, the earliest Plaintiff could have reported his STD to Defendant Daisy was July 16, 2012, a mere four days before he was transferred back to SNMCF.

The pertinent question is whether Plaintiff's symptoms were such that Defendant Daisy "knew the risk to [him]" of a four-day delay in treatment and "chose (recklessly) to disregard it[.]"  *Mata*, 427 F.3d at 753.  On the record before the Court, there is simply insufficient evidence, circumstantial or otherwise, from which a jury could find that she did.  Drawing all reasonable inferences in Plaintiff's favor, even if Defendant Daisy had been made aware of Plaintiff's alleged condition, a four-day delay in treatment for a non-emergent herpes flare-up does not present an unnecessary and wanton infliction of pain nor is it repugnant to the conscience of mankind.  *See Estelle*, 429 U.S. at 105-06.  Accordingly, this claim should be dismissed.

   C.  Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c)(3), district courts possess the authority to decline to exercise supplemental jurisdiction over state law claims once "all claims over which" they had "original jurisdiction" have been dismissed.  *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (recognizing that district courts may "decline to exercise continuing pendent or supplemental jurisdiction over plaintiff's state claims" when "the bases for federal subject matter jurisdiction have been extinguished").  Having determined that Defendant is entitled to summary judgment on Plaintiff's Section 1983 claims, the Court is left with the tort action Plaintiff

instituted under New Mexico state law.  Construing Plaintiff's Amended Complaint liberally and in conjunction with the whole record in this case, it is clear that Plaintiff intended to and has asserted a tort claim against Defendant Daisy arising out of her alleged negligent provision of medical care.[9]  Whether to exercise supplemental jurisdiction over this claim is a matter entrusted solely to this Court's discretion.  *Estate of Harshman v. Jackson Hole Mountain Resort Corp*., 379 F.3d 1161, 1165 (10th Cir. 2004).  The Court recommends declining to exercise supplemental jurisdiction over Plaintiff's tort action.  Plaintiff's state law tort claim for inadequate medical treatment should be remanded to the Thirteenth Judicial District Court, County of Valencia, State of New Mexico.

## V.  Recommendation

For the reasons stated above, the Court recommends:

1. That Defendant Daisy's Motion for Summary Judgment (Doc. 11) be **DENIED;**

2. That Defendant's Motion for Summary Judgment raised in the *Martinez* Report as to Plaintiff's federal claims be **GRANTED**, and that Plaintiff's constitutional claims against Defendant Daisy be **DISMISSED WITH PREJUDICE**; and,

3. That Plaintiff's state law tort claim be **REMANDED** to the Thirteenth Judicial District Court, County of Valencia, State of New Mexico.

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c).  Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to section 636(b)(1)(c), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court for the District of New Mexico.  A party must file any objections within the fourteen (14) day period allowed if

---

[9] "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall*, 935 F.2d at 1110.

that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**